**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MCA Financial Group, LTD, as Trustee for the Fourthstage Technologies, Inc. Liquidating Trust,<br><br>        Plaintiff,<br><br>vs.<br><br>Gardere Wynne Sewell, L.L.P.; Indrajit Bobby Majumder and Jane Doe Majumder,<br><br>        Defendants. | No. CIV 05-2562-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants' Gardere Wynne Sewell, LLP, Indrajit Bobby Majumder and Jane Doe Majumder ("Defendants") Motion to Compel Arbitration and to Dismiss or Stay Proceedings (Dkt.#16); Defendants' Motion to Adopt Bankruptcy Court's Proposed Conclusion of Law Re Dismissal of Assigned Claims to Kevin Craig (Dkt.#17); and Plaintiff MCA Financial Group, Ltd., as Trustee for the Fourthstage Technologies, Inc. Liquidating Trust's ("Plaintiff" or "MCA") Motion to Remand to Bankruptcy Court All Proceedings Prior to Empanelling a Jury. (Dkt.#20). After reviewing the papers, the Court issues the following Order.

**I.      Background**

MCA is the bankruptcy trustee of the bankruptcy estate of Fourthstage Technologies, Inc. ("debtor" or "Fourthstage"), in Case No.01-17604, which is currently pending in the United

States Bankruptcy Court for the District of Arizona. On November 19, 2004 MCA asserted an adversary action in that case, Adv. No. 03-1127 against Defendants Gardere Wynne Sewell LLP ("Gardere") and Defendant Indrajit Bobby Majumder ("Mr. Majumder") asserting common law tort claims arising out of the alleged representation Defendants provided to the debtor. On August 23, 2005, Defendants moved to withdraw the reference of the adversary proceeding from the Bankruptcy court to this Court. (Dkt.#1). Plaintiff opposed the Defendants' request. (Dkt.#4). On March 25, 2006, the Court granted Defendants' request to withdraw the reference of the adversary proceeding to this Court. (Dkt.#7). The Court determined that the tort claims of professional negligence, breach of fiduciary duty and aiding and abetting tortious conduct to be non-core claims. The non-core nature of the claims and the fact that Defendants would not consent to any jury trial on these claims before the Bankruptcy Court supported the Court's decision to withdraw the reference of the adversary proceeding to this Court. In re Larry's Apartment, 210 B.R. 469, 472 (D. Ariz. 1997) ("because bankruptcy courts cannot conduct jury trials on non-core matters, withdrawal is mandated if a litigant is entitled to jury trial on such matters.") (citing In re Cinematronics, Inc., 916 F.2d 1444, 1451 (9th Cir. 1990)). On May 15, 2006, Defendants filed their instant motions to: (1) compel arbitration of the dispute involving the non-core claims and to stay or dismiss the instant proceedings and (2) to adopt the Bankruptcy Court's finding dismissing the assigned claims of Kevin Craig. (Dkt.#'s 16,17). On June 1, 2006, Plaintiff moved to remand all proceedings, prior to the empanelling of a jury, back to the Bankruptcy Court. (Dkt.#20). These motions are fully briefed and ripe for the Court's consideration.

**II.        Plaintiff's Motion to Remand to Bankruptcy Court.**

In support of its position to remand this matter to the Bankruptcy Court for all proceedings, prior to empanelling a jury, should it be necessary, Plaintiff notes that the Ninth Circuit has articulated that district courts are permitted to consider the effect that withdrawal will have on the litigation. See Security Farms v. Int'l Bd. of Teamsters, Chauffers, Warehouseman & Helpers, 124 F.3d 999, 1008 (1997) (noting that in instances of withdrawal

1 pursuant to 28 U.S.C. § 157(d), " a district court should consider the efficient use of judicial
2 resources, delay and costs to the parties, uniformity of bankruptcy administration, delay and
3 costs to the parties, uniformity of the bankruptcy administration, the prevention of forum
4 shopping, and other related factors.") (citation omitted).  Plaintiff asserts that the removal
5 from the Bankruptcy Court of the non-core claims amounts to nothing more than forum
6 shopping by the Defendants and should not be supported.  In addition, Plaintiff asserts that
7 remand to the Bankruptcy court is further supported because of the Bankruptcy court's
8 already-extensive "procedural and factual background with the events giving rise to
9 Plaintiff's causes of action detailing the acts and omissions of the Defendants." (Plaintiff's
10 Motion, Dkt.#20, p.2).  Notably, Plaintiff notes that the Bankruptcy Court has already been
11 briefed on Defendants' instant motion to compel arbitration and to stay of dismiss
12 proceedings and even heard oral argument on the motion on November 16, 2005. (Dkt.#11,
13 Bankruptcy Court docket, Dkt.#32).  Plaintiff cites the Court, consistent with its request for
14 remand, to several cases in which district courts have reserved authority over any jury trial,
15 but matters up to the empanelling of a jury were left to the bankruptcy courts.  For instance,
16 Plaintiff notes that in Barlow & Peek, Inc., v. Manke Truck Lines, Inc., 163 B.R. 177 (D.
17 Nev. 1993) the district court denied debtor's motion to withdraw the reference of non-core
18 action.  The district court  noted that even though the bankruptcy court could not go as far
19 as conducting a jury trial over the non-core action, the bankruptcy court could entertain
20 significant motions and submit proposed findings of fact and conclusions of law to the
21 district judge. Id. at 179.  Moreover, the district court found withdrawal to be unwarranted,
22 at that time, due to the intertwining of issues between the non-core claims and the bankruptcy
23 action. Id.

24      Defendants firmly dispute any remand of the non-core claims to the Bankruptcy court.
25 Defendants take issue with Plaintiff's assertion of forum-shopping based upon Defendants'
26 action withdrawing the reference in the first place and now seeking arbitration. Specifically,
27 Defendants contend that the fact that they are seeking contractual arbitration before the
28 District Court is in no way inconsistent with their right to a jury trial over the non-core claims

1  and that they have consistently sought arbitration pursuant to the terms of the representation
2  agreement between debtor and Defendants. Defendants argue that the relevant factor of the
3  "efficient use of judicial resources" supports their request of withdrawal as any legal ruling
4  on this issue by the bankruptcy court would be subject to de novo review by this Court. See
5  28 U.S.C. § 157(c)(1) (stating that bankruptcy judge may preside over a non-core proceeding
6  and submit proposed findings of fact and conclusions of law to the district court for de novo
7  review). Moreover, Defendants argue that contrary to Plaintiff's position, the Bankruptcy
8  Court does not have any type of special knowledge that makes the Bankruptcy court more
9  suitable to address the Defendants' motion to compel arbitration. Defendants note that the
10 Bankruptcy court stated that it would "allow evidence on the question of whether or not there
11 was a knowing waiver by the corporation;" (Bankruptcy Dkt.#33, p.28, ll. 21-23), however,
12 according to Defendants, simply setting the matter for additional evidence on this issue does
13 not somehow suggest that the Bankruptcy court is better suited to address the issue as
14 compared to this Court.

15    In reviewing the arguments set forth by the Parties, the Court finds that there is no
16 persuasive reason to remand any portion of the non-core proceedings to the Bankruptcy
17 Court. The Court previously determined that withdrawing the reference of the non-core
18 proceedings was appropriate and sufficiently set forth its reasons in its order. (Dkt.#7).
19 There is nothing before the Court now that suggests that any type of remand is proper. For
20 instance, were the Court to remand the issue of whether the non-core claims are subject to
21 contractual arbitration, as noted by Defendants, the Court would again be required to address
22 the issue upon the Bankruptcy court's proposed findings of fact and conclusions of law,
23 subject to a de novo review. Such procedure to address this issue is not consistent with the
24 efficient use of judicial resources. Moreover, there is nothing before the Court to suggest
25 that it is not in a proper posture to adequately address the pending issues such as Defendants'
26 motion to set this matter for arbitration pursuant to the contractual agreement between the
27 debtor and Defendants. It is true that the Bankruptcy received briefing and heard argument
28 on this issue; however, as demonstrated by the bankruptcy record, the bankruptcy court

1 deferred any ruling and ordered evidence to be received as to whether the debtor made a
2 "knowing waiver." The Bankruptcy court's reasoning is adequately addressed in the
3 transcript of the hearing and this Court can properly and efficiently address this issue without
4 any type of remand, which may further delay these proceedings. As such, consistent with
5 the Court's March 25, 2006 order (Dkt.#7), the Court will not remand in whole, or in part,
6 the instant litigation involving Plaintiff's non-core claims against Defendants.

**III.        Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings**

Defendants assert that Plaintiff's non-core claims of professional negligence, breach of fiduciary duty and aiding and abetting tortious conduct which allegedly arise out of the legal representation afforded by Defendants to the debtor are subject to mandatory contractual arbitration pursuant to the August 21, 2001, engagement letter signed by Fourthstage's CEO Kevin Craig and Defendant Mr. Majumder, a partner with Gardere. (Defendants' Motion, Dkt.#16, Exhibit A). The engagement letter possesses a specific provision addressing contractual arbitration by stating in pertinent part:

Mediation/Arbitration

In the event of any dispute or controversy regarding or arising out of our representation of you, it is agreed that the same shall be subject to mediation before a mutually-agreeable mediator. If the mediation is unsuccessful, or if we are unable to agree upon a mediator within thirty days after the dispute arises, then the dispute shall be subject to binding arbitration at Dallas, Texas. The arbitration shall be administered by he American Arbitration Association in accordance with its then current rules and procedures.

(Id. page 5).

In addition, just above the signature line of Mr. Craig, is a provision in all capital letters and bold that states "**THIS LETTER CONTAINS AN AGREEMENT TO RESOLVE DISPUTES BY ARBITRATION**." (Id. p.6, emphasis original). Based upon this language, Defendants contend that this Court lacks jurisdiction at this time to entertain the merits of Plaintiff's state law claims as this matter must first proceed to arbitration as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. Defendants note that the Parties did attempt to mediate these claims, but were unsuccessful, thus, pursuant to the terms of the engagement letter contend that arbitration is the next required step.

- 5 -

1    Plaintiff asserts several arguments in support of its position contesting any notion of
2 mandatory contractual arbitration. For instance, Plaintiff contends that based upon the
3 limited discovery presented it is evident that, at the very least, it is unclear whether Mr. Craig
4 made a "knowing waiver" of his right to proceed to litigation in the event of a dispute.
5 Plaintiff also asserts that it would be contrary to Arizona law and public policy to arbitrate
6 the issue of legal malpractice in this case. In addition, Plaintiff contends that the arbitration
7 clause has no application to the non-core tort claims because some of the conduct and
8 allegations supporting those claims occurred prior to the engagement letter generating the
9 arbitration provision.

10   After reviewing the papers and the record on this issue, as a general matter, the Court finds
11 that the non-core claims are subject to the arbitration provision of the engagement letter
12 signed by Defendant Majumder and Mr. Craig on behalf of the debtor corporation,
13 Fourthstage Technologies, Inc. As noted by Defendants, both Arizona and Texas[1] do not bar
14 the arbitration of legal malpractice disputes. For instance, with respect to Arizona, the
15 Arizona Supreme Court has clarified that while ethically, agreements prospectively limiting
16 a lawyer's liability malpractice are prohibited, unless the client is represented by independent
17 counsel, there is no prohibition against "a lawyer ... entering into an agreement with the client
18 to arbitrate legal malpractice claims, provided such agreements are enforceable and the client
19 is fully informed of the scope and effect of the agreement." ER 1.8(h), cmt.14,
20 Ariz.Sup.Ct.Rules 42; see also Arizona Ethics Op., 94-05 (stating that fee agreement between
21 lawyer and his or her client may contain a clause requiring that any claims of attorney
22 malpractice be arbitrated). In addition, Texas also does not prohibit the inclusion of
23 arbitration provisions of attorney malpractice disputes between lawyers and clients. See In
24 re Hartigan, 107 S.W.3d 684, 689 (Tex.App. 2003) (finding that consistent with the
25 American Bar Association's position, mandatory arbitration provisions of attorney

---

[1]Texas law is relevant as the arbitration provision sets forth that any arbitration is to take place in Dallas, Texas.

- 6 -

1 malpractice claims are not prohibited as such agreements do not limit the lawyer's liability, 2 but instead prescribe procedure for resolving these claims).  While Plaintiff notes that some 3 states prohibit such arbitration provisions in agreements between attorneys and clients, 4 Plaintiff ignores that Arizona does not follow suit.  As such, Plaintiff's citation to such out-5 of-state authority for the proposition that arbitration provisions in engagement agreements 6 are unenforceable, such as the decision in Thornton v. Haggins, 2003 WL 23010100 (Ohio 7 App. 2003),  is not persuasive in the instant case.

8 With respect to the relevant considerations regarding arbitration provisions addressing 9 legal malpractice claims, the Court finds that such considerations have been met in this case. 10 For instance, as noted above, ER 1.8(h) permits  lawyers to enter into an agreement with the 11 client to arbitrate legal malpractice claims, "provided such agreements are enforceable and 12 the client is fully informed of the scope and effect of the agreement."  Plaintiff offers no 13 persuasive argument suggesting that the arbitration provision is not enforceable or contrary 14 to public policy in this case.  Moreover, the Court also finds that Mr. Craig, on behalf of 15 Fourthstage, was "fully informed" as to the scope of the agreement.  The plain language of 16 the engagement letter is clear and broad in scope in applying arbitration "[i]n the event of any 17 dispute or controversy regarding or arising out of our representation of you..." (Defendant's 18 Motion, Dkt.#16, Exhibit A, p.5).  The engagement letter further notified Mr. Craig of the 19 arbitration provision with the conspicuous language directly above his signature line. (Id. 20 p.6).  The limited discovery reveals that Mr. Craig, as the CEO of Fourthstage, was well 21 versed in such agreements, including agreements that possess arbitration provisions.  (Id, 22 Exhibits B and C).  Moreover, and perhaps more importantly, the limited discovery on this 23 issue reveals that the agreement at issue, signed by Mr. Craig, was in fact given to Mr. Craig 24 by the corporation's in-house counsel, Mr. Roger Friedman.  (Id. Exhibit D, p.80, ll.7-9). 25 According to Mr. Craig's deposition testimony, Mr. Friedman ordinarily reviewed documents 26 that he gave to Mr. Craig to sign and raised questions, as necessary. (Id. at pp.123-124, ll.17-27 3).  As such, it appears that based upon the limited discovery, Mr. Craig had the benefit of 28 having the corporation's own legal counsel review the terms and conditions of the

1  engagement letter and signed the agreement after such review. Under such circumstances, 2 the Court finds that Mr. Craig was fully informed as to the scope and effect of the 3 engagement agreement.

4  In addition, the Court also finds that the language of the engagement letter is sufficiently 5 clear and broad to encompass arbitration of claims alleging legal malpractice. As noted 6 above, the relevant language of the arbitration provision is triggered "[i]n the event of any 7 dispute of controversy regarding or arising out of [Defendants'] representation of 8 [debtor]..."(Defendants' Motion, Dkt.#16, Exhibit A). Here, Plaintiff has asserted claims 9 "regarding or arising out of" Defendants' representation of the debtor. Plaintiff's legal 10 malpractice claims clearly implicate the representation provided by Defendants. As such, 11 the Court finds unpersuasive Plaintiff's argument regarding the significance of the 12 engagement letter's absence of express mention of legal malpractice claims.

13  Lastly, contrary to Plaintiff's argument, the Court finds that the scope of the arbitration 14 provision applies to alleged actionable conduct occurring both before and after the date the 15 engagement letter was signed by the debtor. Plaintiff notes that Kevin Craig has issued his 16 sworn affidavit stating that "[s]ome of the claims of Fourthstage Technologies and myself 17 against Attorney Majumder and the Gardere law firm pertain to acts and events occurring 18 prior to August 2001; while others pertain to acts committed after August 2001." (Adversary 19 Proceeding 03-1127, Dkt.#15, Exhibit 1). The engagement letter at issue was issued on 20 August 21, 2001. (Defendants' Motion, Dkt.#20, Exhibit A). Plaintiff cites the pre-August 21 2001 conduct as further support that the arbitration clause of the engagement letter is 22 inapplicable. In response to Plaintiff's position on this point, while disputing representation 23 prior to August of 2001, Defendants argue that because Plaintiff's claims are based upon the 24 alleged representation of Fourthstage both prior and subsequent to August of 2001 that the 25 arbitration clause applies to all of Plaintiff's allegations against the Defendants.

26  In addressing this issue, it is important to keep in mind that the arbitration clause was not 27 sent to Plaintiff until August of 2001. Thus, in order for the events occurring prior to August 28 of 2001 to be subject to mandatory arbitration, the arbitration clause must be applied

- 8 -

1   retroactively to such events. Persuasive authority, cited by Defendants, on the application
2   of arbitration provisions' retroactivity to certain disputes is instructive to the Court's
3   determination of whether the arbitration provision in this case applies to both the pre and
4   post-August 2001 alleged conduct. For instance, in Kristian v. Comcast Corp., 446 F.3d 25,
5   (1st Cir. 2006), the First Circuit found the arbitration agreements between the cable television
6   provider and customers applied retroactively to pre-contract antitrust claims where the
7   contract did not limit the time frame of the agreements in stating that arbitration applied "if
8   we are unable to resolve informally any claim or dispute related to or arising out of this
9   agreement or the services provided." Id. at 31-36.(Emphasis added). In addition, in
10  Beneficial Nat. Bank, U.S.A. v. Payton, 214 F. Supp.2d 679 (S.D. Miss. 2001), the district
11  court noted a review of case law reveals that if an arbitration clause containing retroactive
12  time-specific language, *i.e.*, a phrase such as "this agreement applies to all transactions
13  occurring before or after this agreement" then the court may apply the clause retroactively.
14  Id. at 689. Moreover, arbitration language stating that it applies "to all transactions between
15  us" or "all business with us" also suffices for retroactive effect. Id.  In making these
16  observations, the district court found that the arbitration language sufficient to encompass
17  pre-arbitration provision claims by stating that the provision applies to "[a]ny claim, dispute,
18  or controversy (whether in contract, tort or otherwise) arising from or relating to this
19  Agreement or the relationships which result from this Agreement..." Id. at 689-90.
20      In looking to the language of the engagement letter at issue, like the above cases, it also
21  does not limit the scope of application of arbitration. Rather, the engagement letter possesses
22  arbitration language broad in scope by stating that it applies to "any dispute or controversy
23  regarding or arising out of our representation of you." The provision does not limit the scope
24  of representation to only the representation commencing from August of 2001 forward, rather
25  it applies to any representation. This is significant considering that Plaintiff's allegations
26  against Defendants, both pre and post- August of 2001, are alleged to arise out of Defendants'
27  representation.  For instance, Plaintiff's Complaint states that Defendants provided
28  representation "at all times relevant to this Complaint." (Adversary Proceeding 03-1127,

1 Dkt.#1, Complaint, ¶5). As such, Plaintiff's claims are based entirely on Defendants' alleged representation of Plaintiff. Thus, considering that the engagement agreement entered into between Fourthstage and Defendants does not limit the scope of the application of the arbitration agreement and Plaintiff's claims are based on the alleged representation provided by Defendants, the arbitration provision is applicable to all of Plaintiff's legal malpractice based claims.

In making this determination, the Court finds that by finding the arbitration provision controlling, the Court is not in some way limiting Plaintiff's legal rights. Rather than limiting any liability, the arbitration provision simply prescribes a procedure for resolving the pending claims. See AZ Ethics Opinion 94-05 p.2-3 (citing The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct, § 1.8:901, at 280 n.2.1 (2d ed. 1992)). In addition, as a practical matter, the Supreme Court has made clear that "where [a] contract contains an arbitration clause, there is a presumption of arbitrability..." AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (citing United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960)). The presumption is further supported where the clause at issue is broad in scope. See Id.

Thus, the Court finds that Plaintiff's tort claims based upon legal malpractice are governed by the contractual arbitration agreement between the debtor and Defendants. In reaching this conclusion, the Court must determine whether to stay the instant litigation or dismiss it without prejudice. Based upon the Court's finding that all of Plaintiff's claims are subject to mandatory arbitration, the Court finds that it is appropriate to dismiss Plaintiff's claims. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988) (dismissing plaintiff's claims upon determining the claims are subject to contractual arbitration).

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings. (Dkt.#16). Plaintiff's complaint is dismissed without prejudice as Plaintiff's claims are governed by contractual arbitration as agreed by the parties.

1  **IT IS FURTHER ORDERED** denying Plaintiff's Motion to Remand to Bankruptcy
2  Court All Proceedings Prior to Empanelling a Jury. (Dkt.#20).
3  **IT IS FURTHER ORDERED** denying as moot Defendants Motion to Adopt Bankruptcy
4  Court's Proposed Conclusion of Law Re Dismissal of Assigned Claims to Kevin Craig
5  (Dkt.#17).
6  **IT IS FURTHER ORDERED** directing the Clerk to enter Judgment accordingly.

DATED this 23rd day of March, 2007.

_____
Mary H. Murguia
United States District Judge